OPINION OF THE COURT
Sheldon S. Levy, J.
If a plastic bag of narcotics is found on the outside sill of a broken kitchen window, is it “in open view in a room”, within the meaning of subdivision 2 of section 220.25 of the Penal Law (commonly known as the “room presumption for criminal possession of a controlled substance”)? The answer to this question is of first impression, and similar questions will arise with increasing frequency as law enforcement officials continue to spotlight the proliferation of narcotics trade in this city and State and augment efforts to combat it.
Subdivision 2 of section 220.25 of the Penal Law reads as follows: “The presence of a narcotic drug, narcotic prepara *214 tion, marihuana or undiluted phencyclidine in open view in a room, other than a public place, under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found; except that such presumption does not apply to any such persons if (a) one of them, having obtained such controlled substance and not being under duress, is authorized to possess it and such controlled substance is in the same container as when he received possession thereof, or (b) one of them has such controlled substance upon his person.”
The issue in this case encompasses a familiar fact pattern. After properly securing a search warrant for subject, nonpublic apartment, the police raiding party proceeded to execute the warrant on March 26,1980, at about 5:30 p.m., with the aid of a battering ram applied vigorously to the front door. Upon gaining entrance to the premises and after making an official announcement of their presence, the team members made a hasty reconnaissance. The lead officer quickly reached the kitchen area and observed a not unusual scene.
On the kitchen table, which was positioned against a wall and which was a few feet from the damaged window aforesaid, appeared various quantities of a white powder (later identified as containing cocaine) in different stages of packaging, along with a gamut of drug paraphernalia. The total aggregate weight of the various substances containing cocaine found on the table was 1 and 7/8 ounces plus 28 grains — about 27 grains short of 2 ounces.
Also discovered in the vicinity were four males — the defendants herein — in a variety of poses. Two were leaning against the entranceway to the kitchen; another was seated in the middle of the room; and a fourth was perched on the sill outside of the severely fractured window. When the observing officer was about two feet from the window, and as he was directing the sill-sitter back into the room, he first noticed, and was able to see, the small plastic bag on the sill behind the lower portion of the *215 wooden window frame. It is this plastic pocket, filled with a cocaine-laced white powder, weighing in toto one-quarter ounce plus 8 grains — and the prosecutor’s entreaty to charge with respect thereto — which necessitates the present determination.
The People’s proof having been concluded, the Assistant District Attorney now seeks an early ruling and makes an impassioned appeal to have the “room presumption” charge ultimately applied simultaneously to the narcotics discovered both on the kitchen table and inside the plastic bag on the sill. The prosecutor argues that the police officer spotted the plastic packet while standing inside the room, albeit only two feet from the broken window; that, since he was able to observe the subject object from within the room, the plastic bag must be held to be in open view in the room; that the outside sill of a window should be considered to be inside the room; and that, in all events, the statute involved has previously been liberally construed and should be so interpreted again.
The practical ground for this, perhaps, overabundance of youthful exuberance has not been stated, but is readily discernible. If the prosecution’s contention is correct, the jury will, in the ultimate, be considering, at the least, an AII felony charge against all defendants rather than a B felony. Accordingly, the defendants — with similar insistence — vigorously demur.
For reasons unrelated to this decision, all four defendants were originally charged, inter alia, with one count of criminal possession of a controlled substance in the first degree — a class A-I felony, requiring the possession of four or more ounces. As the People’s evidence was adduced however, it became obvious that, ultimately and as a matter of law, the jury could be asked to judge a count of first degree possession only as against one of the defendants.
With respect to the entire quantity of cocaine observed on the kitchen table and aggregating just under two ounces in weight, the only crime which can properly be charged against all defendants will be the lesser included offense of *216 criminal possession of a controlled substance in the third degree, a class B felony involving possession of one-half ounce or more. However, if the narcotics contained in the aforesaid plastic bag on the sill can be lumped together with the kitchen table quantity and included in the total weight for which the “room presumption” will be charged, then the lesser included offense, to be deliberated upon by the jury will be second degree criminal possession, a class A-II felony involving two ounces or more, and a much more serious crime.
The resolution of the problem posed by the People’s application is, of course, dependent upon a judicial review of the significance of the statutory words “in open view in a room” (emphasis supplied). The phrase has not previously been interpreted. Moreover, it should not be confused with the “plain view doctrine” or with the “open view” situation, each of which has a distinctly different meaning (see State v Kaaheena, 59 Hawaii 23).
Strict construction of legislative enactments in the field of criminal law is normally mandated (People v Shakun, 251 NY 107, 113). With respect to the comparatively simple statutory language here involved, law and logic demand no less. Nevertheless, it can also be appreciated that even a literal interpretation must, at least, be tempered within the dictates of everyday English usage and in a fashion consistent with common sense and rationality. However, no viable reason appears as to why the meaning of the instant words should be stretched beyond their clear legislative intent, especially when such an expansion would be at variance with both strict construction and common sense.
The primary purpose of the Legislature in promulgating the over-all section was an attempt to impose enforceable sanctions on the workers in the “drug factories” who were known to be engaged in packaging operations, but who were seldom individually observed in actual physical possession of any of the contraband (see Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 220.25). We may not presume, however, that this commendable aim so blinded the lawmakers that they *217 intended thereby to adopt language out of all proportion to its common and ordinary import.
Initially, it is perfectly true that the statute does not speak to where the person making the observations must be positioned when viewing the narcotics in the room. Such sighting could be made from inside the room; at the entranceway to the room; from another nearby room; through a transom or keyhole (if not otherwise a constitutional infringement); or even from another building with the aid, for example, of high-powered binoculars. The only relevant requirement with respect to location is that the drugs be easily seen in open view and be inside the room itself.
In this regard, the words “in open view” must be held to retain their customary, usual, regular, dictionary meaning. Something hidden from normal sight, whether intentionally or unintentionally, cannot be considered “in open view”. Something not readily visible because of a normal or natural obstruction is not “in open view”. In fact, where ordinary vision is impeded by an obstacle, the object to be sighted is not “in open view”. On the other hand, an object that is “in open view” is fully revealed; is easily visible; is readily observable; is free from any impediments to view; is distinctly recognizable; and is within the range of ready vision.
As to the phrase “in a room”, it can only have its usual and standard commonsense definition and, as stated, can only refer to the narcotics observed, not to the position of the observer. Outside a room, beyond its confines or in another room, cannot be “in a room” itself. Even if a window is considered a part of a room rather than an appurtenance, the outside sill of the window, which is behind the lower frame and beyond the normal perimeters of the room, is certainly neither a portion of that room nor within the room.
In the instant case, the plastic packet on the outside sill would not have been visible to the glance — or even the stare — of a person in almost any portion of the room — even one with an insatiable curiosity. In actuality, it is doubtful that the officer would have seen the plastic bag at all — because of the usual intrusive glare of a window pane *218 at twilight — if the glass itself had not been broken out and mostly removed. The officer, in fact, testified that the packet was not visible to him until he stood about two feet from the window, but the important consideration is that he was making the unusual inspection through the window frame and outside of the room.
Plainly then, the packet was not in the police observer’s normal range of vision. Nor was it noticed by him upon an immediate scan of the kitchen as were the drugs and paraphernalia on the table. In order to see the plastic bag at all, he had to approach within a. few feet of the broken window and look beyond it. Accordingly, an object that is seen on the outside sill of even a paneless window, behind the bottom wooden frame of the window itself, and hidden from ordinary sight until it is seen from a distance of about two feet away, cannot be held to be “in open view in a room”. Simply put, the package of narcotics was not in open view and was not even in the room.
Under such circumstances, it would be legally improper and not in the interests of justice or of the public to augment the aggregate weight of the narcotics found in the room on the kitchen table with the additional cocaine discovered On the sill, merely to raise the degree of the possessory crime to be considered by the jury.
Nevertheless, and despite the discussion aforesaid, the People argue further that another phrase in the very same subdivision of the subject statute has been afforded a liberal exposition by two courts and at least one commentator and that the particular language here involved should be accorded similar broad treatment.
Under the statute, the presumption (which should now inore properly be labeled a “permissive inference” [see People v Leyva, 38 NY2d 160, n 3, p 168; People v Lemmons, 40 NY2d 505, 511, affd sub nom. Ulster County Ct. v Allen, 442 US 140]) applies to “each and every person in close proximity to such controlled substance at the time such controlled substance was found” (Penal Law, § 220.25, subd 2). As stated, the phraseology, “in close proximity”, has had the benefit of a number of expansive interpretations, including persons just outside the subject room (People v Caban, 90 Misc 2d 43, 47); a person undressed and in bed in *219 a different room (People v Daniels, 37 NY2d 624, 627, 630-631, but see, also, Wachtler, J., concurring); and those who might have fled to nearby “closets, bathrooms or other conveniently located recesses” (see Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 220.25).
However, the public policy considerations, which were directly involved in these judicial pronouncements, were clear. The Legislature, it was said or implied, intended to aid the authorities in their “war” against illicit narcotics traffic; to make police raids on illegal drug “factories” a more effective weapon in the combat arsenal of law enforcement; to simplify the People’s burden of proof in these constructive possession cases; and to prevent “factory” employees from escaping justifiable legal consequences merely because none of them was in actual physical possession of the plainly visible “tools of the trade” at the time of the police interruption of their activities.
Moreover, it is certain that, with respect to this particular language, the alternative to a generous construction is a practical destruction of the avowed purpose of the legislation. If narcotics malefactors can avoid ultimate conviction for their participation in the packaging process by the simple expedient of fleeing to another room in the “factory” complex, then seldom will there be sufficient proof even to activate the “room presumption”. If the prosecution evidence cannot encompass a “close proximity” not measured by feet or locale alone, it can serve no practical or useful purpose in the continuing fight against illegal drug trafficking and packaging.
Contrariwise, no vital public policy considerations are involved in this ruling concerning the legal meaning of the words “in open view in a room”. No miscreant will avoid prosecution or conviction merely because of the findings herein. At the most, in similar cases, such a construction may serve to determine or to lessen the degree of crime which ultimately will be charged. This, however, is a reasonable cost to pay for a judicial interpretation that, in my view, serves the cause of law, of logic, of common sense and, most importantly, of justice.
*220 For the reasons stated, the People’s request to include in the “room presumption” instruction the narcotics discovered on the outside windowsill is, in all respects, denied.