OPINION OF THE COURT
Charles A. Kuffner, J.
Under indictment No. 353/86, the defendants are charged with various sections of Penal Law article 220 regarding the sale and possession of controlled substances.
At issue in these motions before the court are counts six and seven, which charge all defendants with criminal possession of a controlled substance in the fourth degree (Penal Law § 220.09) and in the third degree (Penal Law § 220.16), respectively. They are charged with possession of cocaine located and found in the refrigerator at 141 Parkhill Avenue, apartment No. 3k, wherein all the defendants were arrested. None of the defendants are tenants of the apartment.
After an undercover purchase of cocaine, the police obtained a search warrant for apartment No. 3k. After another undercover purchase, police officers waited outside the apartment door. When someone inside the apartment opened the front door, the officers rushed inside and placed all five occupants under arrest.
The subject apartment is described as a one-room studio-type apartment with an alcove for a bed and an alcove for a kitchen and a bathroom. There is a table to the left of the front door, and the officers found a rock of cocaine and United States currency there. In the kitchen, the officers found a *713 glass-doored cabinet containing crack vials and a scale. A refrigerator was next to this cabinet.
An officer opened the refrigerator and found a plastic bag containing 128 vials of crack on the door of the top shelf, in the egg holder. These vials of crack are the subject of counts six and seven.
Penal Law § 220.25 (2), the "room presumption” statute, provides: "2. The presence of a narcotic drug, narcotic preparation, marihuana or phencyclidine in open view in a room, other than a public place, under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found; except that such presumption does not apply to any such persons if (a) one of them, having obtained such controlled substance and not being under duress, is authorized to possess it and such controlled substance is in the same container as when he received possession thereof, or (b) one of them has such controlled substance upon his person.”
The District Attorney charged the Grand Jury as to this statute. There was no other evidence that the defendants exhibited any dominion or control over these vials of crack.
The issue to be resolved is whether it was proper to charge the Grand Jury with the room presumption statute, given the location of the 128 vials of crack inside the refrigerator.
One known decision has interpreted the phrase "in open view”. It is not to be confused with the "plain view doctrine” or the "open view” situation commonly associated with the law of search and seizure.
In People v Diaz (108 Misc 2d 213), the police executed a search warrant at a "drug factory”. Upon reaching the vicinity of the kitchen, an officer observed various quantities of cocaine in different stages of preparation on a table. In the same vicinity, he found four males. One of them was sitting on the window sill on the other side of the kitchen window. The window had a pane missing from its frame. As the officer was directing the sill-sitter back into the kitchen, he was about two feet from the window. At that point, he saw a plastic bag through the window, located on the sill behind the lower part of the window frame. This bag contained one-quarter ounce of cocaine.
*714 In construing the phrase "in open view” the court stated: "In this regard, the words 'in open view’ must be held to retain their customary, usual, regular, dictionary meaning. Something hidden from normal sight, whether intentionally or unintentionally, cannot be considered 'in open view’. Something not readily visible because of a normal or natural obstruction is not 'in open view’. In fact, where ordinary vision is impeded by an obstacle, the object to be sighted is not 'in open view’. On the other hand, an object that is 'in open view’ is fully revealed; is easily visible; is readily observable; is free from any impediments to view; is distinctly recognizable; and is within the range of ready vision.” (108 Misc 2d, at 217.)
The court held that the plastic bag on the window sill was not in the officer’s normal range of vision, and hidden from ordinary sight until seen from a distance of two feet through a window. It was determined that the plastic bag was not in open view within the plain language of the statute.
Here, an even stronger showing has been made that the subject drugs were not in "open view”. A person attempting to view the subject vials located inside the refrigerator would have his vision impeded by the normal obstruction of the refrigerator door.
Apparently, the obstacle obstruction impairing the observer’s vision need not be solid or even part of a sealed container, such as a trunk, suitcase, or strongbox. In People v Rodriguez (104 AD2d 832, 834), the Second Department also used an everyday commonsense application of this statutory phrase and held that cocaine discovered in an opaque bag behind a curtain on a window sill was not in "open view”.
Based upon a commonsense and rational interpretation of the statutory language, the logical conclusion is that the vials of cocaine which are the subject of counts six and seven were not in open view. There is no apparent reason why this phrase should be stretched beyond the words used by the Legislature. Too broad or liberal an interpretation would transform the statutory language beyond the legislative intent. (See, People v Diaz, supra, at 216.)
Accordingly, the People were not entitled to instruct the Grand Jury as to the statutory presumption of possession by defendants of the vials of cocaine found in the refrigerator. Because there was no independent evidence of any dominion and control over the vials by any of the defendants, the counts six and seven must be, and are hereby, dismissed.
*715 There was other evidence discovered and seized at the time of execution of the search warrant. A brown paper bag containing a plastic bag which in turn contained a rock of cocaine was found on a table. The table also had United States currency, as well as an undercover officer’s buy money. There is no evidence as to whether the brown paper bag was open at the time of its initial observation.
Applying the standard enunciated in Diaz (supra) to the brown paper bag, it is apparent that the bag was in "open view”; whether or not the bag itself was an obstacle preventing the contents from being in open view is the more difficult question. On the latter problem, Diaz provides fewer answers and resort to the companion doctrine of plain or open view searches and seizures may be appropriate for further guidance.
Under the plain view doctrine, it is not a prerequisite for a legal seizure that the officers know with certainty that the seized item is evidence of a crime. (United States v Bonfiglio, 713 F2d 932, 936.) Rather, according to Bonfiglio, it is the context in which the item is found, and whether that context supports an inference that it is evidence of a crime, that is the focus. In Bonfiglio, officers were executing a search warrant for a rifle. While looking under a floorboard, they saw in plain view an envelope on which was inscribed "Tap on Ben Bon Hoft”. The envelope contained a cassette tape on which an illegal wiretap was recorded. The Second Circuit Court of Appeals held that the circumstances under which the cassette was found, i.e., the label, the location under a floorboard next to a rifle, handguns, and other suspicious items, "supported an inference that it was evidence of a crime” (supra, at 936).
Likewise, the circumstances under which the brown paper bag, observed in open view, was found raises a reasonable inference that it contained evidence of a crime. It was found on a table which also contained United States currency, and specifically identifiable buy money. An undercover purchase of narcotics had been previously made at this apartment. A scale commonly used for weighing drugs and empty crack vials were discovered. Under the totality of these circumstances, it was reasonable to infer that the brown paper bag, found in open view, contained evidence of a crime.
The court in Diaz (supra) appreciated that a literal interpretation of the term "open view” must be tempered with the dictates of everyday English usage and consistent with com *716 mon sense. The Legislature could not have intended a result all out of proportion to the common and ordinary import of the phrase "open view”. (See, People v Diaz, supra, at 216-217.) Common sense tells us that during packaging operations at the so-called "drug factories”, some of the drugs are expected to be physically located in some sort of container, such as a bag or an envelope. During the process, the drugs are normally relocated from one package, processed, and replaced into other packages. It is inconceivable that the Legislature intended any of the "factory workers” to escape the presumption of possession because the drugs happened to be fortuitously located in an opaque bag or envelope at the time of the search.
The Diaz decision lends credence to the conclusion that the drugs themselves need not be in open view to trigger the "room presumption”. As long as the bag or envelope containing them is in open view, the statute has been satisfied. In Diaz (supra, at 217-218), the court directed its analysis on whether or not the packet containing the drugs was in open view, and not the drugs themselves. In Diaz, the packet was ultimately found behind a window sill, and the court held that the "package of narcotics was not in open view” (People v Diaz, supra, at 218; emphasis supplied).
In this court’s opinion, this interpretation of Penal Law § 220.25 (2) is consistent with the legislative purpose of simplifying the People’s burden of proof in prosecuting drug possession cases such as this. At the same time, it does little to stretch the meaning of the statutory language used beyond its common everyday usage and understanding.
Accordingly, the court holds that the substances found in the brown paper bag were in open view, and the Grand Jury was properly charged with the "room presumption” statute.
The other evidence found presents less of a problem in construction.
The empty crack vials found in plastic bags in a cabinet were first observed through the cabinet door, which was made of glass. Glass does not impede one’s vision; it is "fully revealed” and is "easily visible”. (People v Diaz, supra, at 217; see also, People v Crapo, 103 AD2d 943, 944, affd 65 NY2d 663.) Thus, whatever may be seen through it is in open view. As to the pastic bag, it is commonly known in everyday experience that the type sold to the public in supermarkets and the like are clear. Even if the plastic bag was opaque, it *717 was discovered in a circumstance similar to that of the brown paper bag.
The other items of evidence were also found in open view. One hundred and five vials of crack were found in a plastic bag which defendant Livingston was pushing away from herself when she was found fidgeting on the bed.
Another 100 vials of crack and a rock of crack and powder were found in plastic bags in a red vinyl bag on the floor next to the bed. The bag was open when first observed, the officer was able to see these items in the open bag from his position in the room. Therefore, these items were also in open view.
Accordingly, the motion to dismiss other counts of the indictment charging possession of the aforementioned narcotics and paraphernalia, on the ground that they were not in open view, is denied.
A determination on the balance of defendants’ motions will follow.