Jasen, J.
Defendants Melvin Lemmons, Raymond Hardrick, Samuel Allen and Jane Doe[1] were convicted, after a jury trial, of two counts of possession of a dangerous weapon, two loaded revolvers. The Appellate Division, with two Justices dissenting in part, affirmed the judgments of conviction, without opinion. (49 AD2d 639.) On this appeal, all four defendants argue that their motion to suppress the weapons on constitutional grounds should have been granted. In addition, defendants Lemmons, Hardrick and Allen contest the legal sufficiency of the evidence supporting their convictions. There should be an affirmance.
On March 28, 1973, the defendants were riding in a late model passenger car on the New York State Thruway. Melvin Lemmons was at the wheel, with Jane Doe beside him in the front seat and the other two defendants seated in the back. Shortly before 1:00 p.m., while the car was passing through Ulster County, it was detected speeding and a State Trooper signaled the driver to pull the car over to the right side of the road. The patrol car stopped abreast of the Lemmons vehicle on the grassy center mall on the left side of the highway. Officer John Erasing walked over to the car, approached the driver, requested his operator’s license, and advised him that the officer was going to issue him a ticket for speeding. Lemmons produced a Michigan driver’s license and no vehicle registration at all.[2] Since the vehicle had New York license plates, the officers followed normal procedure by requesting, over the police radio, that the Department of Motor Vehicles check on the operator’s license and the car registration. In *508 addition, the officers had their dispatcher submit the information to the National Crime Information Center computer. Although the State department reported that the vehicle was "clean”, the computer check revealed that Lemmons was "wanted by the police department in Detroit, Michigan on a weapons violation”. Upon receiving this information, Officer Askew, the second State policeman in the patrol car, crossed the highway, placed Lemmons under arrest for being "a fugitive from justice”, brought him over to the patrol car and placed him in the back seat. Officer Askew then returned to the Lemmons vehicle in order to ascertain the identity of its three remaining occupants: "I had three other unknown people. Obviously, I have to get their names”. He walked around the vehicle to the passenger’s side and looked into the window. He spotted a woman’s handbag on the floor of the car between the door and the front seat. A portion of a .45 caliber automatic pistol was protruding from the open handbag. The officer then placed the three passengers under arrest. A subsequent search of the handbag established that there were two loaded automatic pistols inside, the criminal possession of which all four defendants have been held accountable.
All defendants contend that the arrest of Melvin Lemmons was invalid and, since the "search” of the car was incident to his arrest, the evidence of handgun possession should have been suppressed. Reliance is placed on the fact that the Michigan warrant upon which Lemmons’ arrest was predicated had been dismissed a few days prior to this incident. In our view, the validity of the seizure of the two weapons does not turn upon the legality of Lemmons’ arrest under the dismissed Michigan warrant.[3] We sustain the seizure upon the ground that the weapons came into the plain view of the State policeman as he was conducting a legitimate police inquiry.
The standard by which the constitutionality of seizure and search is measured is whether the actions of the police were reasonable in light of all the circumstances. (Cady v Dombrowski, 413 US 433, 448; People v Kreichman 37 NY2d 693, 697; see People v Moore, 32 NY2d 67, 69, cert den 414 US 1011.) Here, the seizure of the handguns was not the product of a search, for the only search ever conducted by the State Police officers was a frisk of Lemmons’ person for weapons. The *509 handguns, rather, came into the plain view of an officer conducting an inquiry that was reasonable under the circumstances. Lemmons, the driver of the car, had been apprehended speeding, did not possess a valid vehicle registration and was apparently wanted by the authorities of another State. Confronted with these facts, the officers were entitled, if not obligated, to ascertain the identity of his three traveling companions. (See People v De Bour, 40 NY2d 210, 218-219.) This, and no more, is what the officer sought to do. In performing his duty, the officer observed a weapon in a handbag within open view. The seizure of the bag and its contents and the subsequent arrest of the three passengers were legitimate and constitutional police responses to the situation then confronted. (See People v Singleteary, 35 NY2d 528; Ker v California, 374 US 23, 42-43; cf. People v Brosnan, 32 NY2d 254, 260.)
Turning to the second issue on this appeal, the three male defendants contend that there is insufficient evidence to establish that they were in possession of the handbag containing the weapons. The fourth defendant, Jane Doe, is precluded from raising this argument because of her voluntary admission that the handbag was hers. To support the convictions of the three men, the People rely on subdivision 3 of section 265.15 of the Penal Law which provides, insofar as it is relevant here, that the presence of a firearm in a private automobile, other than a stolen vehicle, "is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found, except * * * if such weapon, instrument or appliance is found upon the person of one of the occupants therein”. Defendants argue that the handbag of Jane Doe was a part of her person and, thus, the statutory presumption is inapplicable.
To resolve the issue, we first look to the history underlying the statute. Since the automobile is itself of relatively recent origin, it was not until the second and third decades of this century, when popular use and ownership of motorized vehicles first became widespread, that automobiles came into vogue as an instrument for the furtherance of criminal purposes. Under traditional rules, developed in a motorless age, criminal possession of a weapon was not established unless the weapon was "within the immediate control and reach of the accused and where it is available for unlawful use if he so *510 desires”. (People v Persce, 204 NY 397, 402.) Difficulties arose when a weapon was found secreted under the seat, in the glove compartment or in the trunk of an occupied automobile. Traditional analysis precluded a finding that any of several occupants of the automobile was sufficiently close to the weapon as to be in actual possession of it. For example, in one 1930 case, the police intercepted an automobile and found a revolver under the driver’s seat. The court, in applying the relevant standards, was compelled to release all defendants for failure to sufficiently establish possession. (People ex rel. De Feo v Warden, 136 Misc 836.) The court remarked, however, that the case and other similar situations "establishes the urgent need for legislation making the presence of a forbidden firearm in an automobile or other vehicle presumptive evidence of its possession by all the occupants thereof. Such an amendment would require the occupants of an automobile to explain the presence of the firearm and enable the court to fix the criminal responsibility for its possession.” (136 Misc 836.) In 1936, the Legislature took heed of this suggestion and enacted section 1898-a of the former Penal Law providing that all persons in an automobile at the time a weapon is found in the vehicle are presumed to be in illegal possession of the weapon. (L 1936, ch 390.) Although the statute did contain a number of exceptions, the statute did not except the situation where the weapon was found on the person of one of the vehicle’s occupants. This exception made its appearance much later, in 1963, when the Legislature redrafted a number of contraband-related presumptions and placed them in a single section of the old Penal Law (§ 1899). (L 1963, ch 136, § 4.) However, it should be noted that at least one court had read such an exception into the statute prior to its 1963 amendment. (See People v Logan, 94 NYS2d 681, 684.) The "upon the person” exception was carried into the present provision of the 1967 Penal Law.
The statutory presumption establishes a prima facie case against the defendant which presumption he may, if he chooses, rebut by offering evidence. Generally, the presumption will remain in the case for the jury to weigh even if contrary proof is offered but may be nullified if the contrary evidence is strong enough to make the presumption incredible. So too, if no contrary proof is offered, the presumption is not conclusive, but may be rejected by the jury. (Cf. People v *511 McCaleb, 25 NY2d 394; see, also, People v Leyva, 38 NY2d 160.)
Whether the weapons were found on the person of one of the vehicle’s occupants is primarily a question of fact. Here, there was testimony that the handbag was situated on the floor of the car in the space between the front seat and the car door. The argument that the pocketbook was a part of Jane Doe’s person is not an unattractive one, given the fact that women and men in our society often use handbags and purses to carry and store personal items of many kinds and are generally held directly by the hand or arm or are placed within easy reach. However, the placement of a weapon in a handbag does not necessarily indicate that the owner of a handbag is in sole and exclusive possession of the weapon. Whether the owner of the handbag is the sole possessor of the weapon depends upon the access to the bag that others may have and whether the others have knowledge of its contents. Similar reasoning might well be applied to briefcases, shopping bags with groceries, cartons, suitcases, or the myriad of other things that people frequently carry or transport. To hold that merely because the weapons were found in a briefcase, handbag, shopping bag or carton the presumption is nullified would defeat the legislative intent and render the statute nugatory. Astute illegal possessors of weapons then would only need to carry weapons in any kind of personalized containers to successfully evade joint responsiblity. There would be added difficulty, not present in this case, of ascribing ownership of the container to one of the passengers, a matter that might be resistant to proof where the container itself reveals no information to identify its owner or where the owner of the container is not present in the vehicle at the time of apprehension. Surely this kind of rationale would return the law to the early days of this century when law enforcement was easily frustrated by an automobile shell gamé reminiscent more of vaudeville than of the courts. To be sure, there may be circumstances where the evidence is clear-cut and leads to the sole conclusion that the weapon was found upon the person. For example, the exception would have clear application where the weapon is secreted under one person’s shirt or under other items of clothing or in a pocket. (See People v Garcia, 41 AD2d 560; People v Davis, 52 Misc 2d 184 [J. Irwin Shapiro, J.].) Absent this kind of clear indication that the weapon was actually upon the person of one *512 occupant, the question of the presumption’s applicability is properly left to the trier of fact under an appropriate charge. Only the trier of fact, after hearing all the testimony and assessing the credibility of witnesses, can determine the factual issues of access and the degree to which possession is personalized. As in this case, the precise location of the container may be a critical factual issue. Although some may draw different inferences from the nature of the container and its placement, those inferences, based as they are on contested facts, are generally to be drawn by juries and and not by appellate Judges.
It should be noted that defendants did seek to have the case dismissed, after the close of the People’s case, on the ground that the presumption did not apply. The trial court denied the motion, apparently accepting the prosecutor’s argument that the applicability of the presumption was a question of fact for the jury. However, the trial court never charged the jury with respect to the "on the person” exception. Nevertheless, the defense did not except to the absence of this language in the court’s charge. As a result, what we view as a jury question was never presented to the jury and for the reasons stated we cannot conclude in this case that as a matter of law the presumption was inapplicable.
The order of the Appellate Division should be affirmed.

. A fictitious name for a young woman subsequently adjudicated a youthful offender.

. At the suppression hearing, Officer Erasing testified that defendant Lemmons displayed a long since expired temporary registration. On the other hand, Officer Askew stated that no registration at all had been produced. The suppression court credited Officer Askew’s version and this finding, as well as the other findings of fact made by the suppression court, were affirmed by the Appellate Division. Thus, our review is restricted to the legality of the weapons’ seizure and to the sufficiency of the evidence and we may not consider defendants’ arguments, addressed to alleged factual contradictions. (See, e.g., People v Maney, 37 NY2d 229, 233.)

. In light of our resolution of the issue, we do not decide whether Lemmons’ arrest was, in fact, valid. (See People v Lypka, 36 NY2d 210, 214; People v La Pene, 40 NY2d 210, 223-224.)