Wachtler, J.
The defendant was charged with possession of a weapon as a felony, criminal possession of a dangerous drug in the sixth degree, resisting arrest and menacing. Before trial Roberson moved to suppress certain incriminating statements made by him as having been obtained in violation of his right to counsel. Following a hearing, his motion to suppress was denied and he subsequently pleaded guilty to possession of a weapon as a felony[1] (Penal Law, former § 265.05) in satisfaction of all the counts of the indictment. He was later sentenced to a nine-month term of imprisonment. On this appeal he argues that the damaging statements, obtained out of the presence of his attorney after he had been arraigned, indicted and had been assigned counsel, should have been suppressed.
On May 6, 1971, pursuant to a search warrant, two police officers entered the apartment in which the defendant lived together with Tony Mangini, Kathleen Splaine and another woman. Mangini, Splaine and the defendant were home at the time. The police arrested all three individuals[2] and seized a small quantity of cannabis and a .32 caliber revolver which they found in the apartment. Roberson was arraigned in the Criminal Court of the City of New York the following day, and counsel was assigned. He was incarcerated until his release on bail on June 3, 1971, and an indictment was filed against him on June 4, 1971.
Five days later, on June 9, 1971, Roberson went to the offices of the Internal Affairs Division of the New York Police Department (hereinafter "IAD”) to file a complaint against his arresting officers. Once there, he was taken to a second floor office where he was interviewed by Sergeant Ryan, an IAD investigator. Sergeant Ryan did not advise the defendant of his constitutional rights. Roberson complained to Sergeant Ryan that the arresting officers had falsely charged him with possession of heroin when all he had were small quantities of *108 marijuana and hashish,[3] and that he had been beaten about the head with a blackjack. In giving this detailed account of the events surrounding his arrest, Roberson revealed that the arresting officers had also seized the weapon which they had discovered on a shelf in the loft where the defendant was sleeping when the officers entered. Thereafter, in response to an inquiry from Sergeant Ryan, Roberson acknowledged that the gun in question belonged to him.
The next morning, Roberson telephoned the New York City Civilian. Complaint Review Board (hereinafter "Review Board”) and informed them that he wished to lodge a complaint about unjust and unlawful conduct on the part of his arresting officers. He was asked to go to the Review Board’s offices for an interview, and it was suggested that he bring along any witnesses to the event. Later that same day, Roberson, Mangini and Splaine arrived at the Review Board, and after an initial inquiry at the front desk, Roberson was taken to a private office where he was interviewed by Captain Kenny. The officer identified himself as a police officer but did not advise the defendant of his constitutional rights.
Roberson repeated essentially the same account of the incident which he had given to the IAD. As the details of the event began to unfold, but prior to any damaging admission by the defendant, Captain Kenny interjected: "I should warn you before we get into this thing too heavily that under the Miranda warnings we have to warn you that anything you say here can be used against you in court and you understand that? And you still want to make a statement?” When Roberson replied yes, Captain Kenny continued the interrogation without ever giving the defendant the complete warnings as required by Miranda v Arizona (384 US 436). Subsequently Roberson once again revealed that a weapon had been seized by the arresting officers. Captain Kenny then asked Roberson if it was his gun and whether it was duly licensed, and Roberson made inculpatory statements in response to each inquiry.
We are of the opinion that the lower courts were in error in refusing to suppress the statements before the IAD and the Review Board. In People v Townes (41 NY2d 97), decided today, we held that statements made in the course of an *109 interview before the Review Board cannot be regarded as voluntarily made and not the product of interrogation merely by reason of the fact that the interview from which they were obtained had been initiated by a defendant’s complaint with respect to illegal police conduct. Our decision in that case is clearly dispositive of those issues in this case as well.
We also find no merit in the People’s argument that the damaging statements were admissible since the interviews by the IAD and the Review Board were not part and parcel of the normal investigation of the particular criminal charges then pending against this defendant. The officers’ queries with respect to the possession of the gun were in no way related to any legitimate inquiry into the propriety of the police conduct or the nature of Roberson’s complaint. They could serve no purpose other than to aid the prosecution in meeting its heavy burden of establishing the ownership of a weapon found in an area occupied by several people and where no one individual could be said to have dominion and control of the weapon (see People v Lemmons, 40 NY2d 505, 514 [concurring opn]). By these interrogatories, the interviewing police officers transcended the legitimate scope of inquiry allowable in connection with an interview designed to vindicate the defendant’s constitutional rights, and it cannot be said that this probe was divorced from the criminal prosecution of this defendant.
Finally we turn to the prosecution’s reliance on People v McKie, (25 NY2d 19) to sustain the lower courts’ decision that the statements were properly admissible. Were this case to involve a statement blurted out spontaneously and voluntarily, though perhaps inadvertently, without interrogation, by a suspect who had neither been arrested nor arraigned nor indicted, we would be able to reach the same result as in McKie. Here, however, the statement was provoked by and the product of a thorough and detailed interrogation of an arraigned and indicted defendant in the absence of his assigned counsel.
This court has just recently, in People v Hobson (39 NY2d 479, 485), clearly articulated the fundamental importance of the availability of the advice of an attorney in the safeguarding of an individual’s rights, and the singular role of the right to counsel in insuring that such advice be made available. If we were to allow conduct of the type practiced in this case, the right to counsel would be vitiated.
Accordingly, the order of the Appellate Division should be *110 reversed, the plea vacated, the statements before the IAD and the Review Board suppressed, and the case restored to its prepleading status.

. Although the revolver was found in a dwelling, the proper charge was possession of a weapon as a felony rather than as a misdemeanor since the defendant had previously been convicted of a crime.

. The charges against Mangini and Splaine were dismissed.

. In truth the arresting officers had never charged Roberson with possession of heroin, and it is conceded by him on this appeal that he was mistaken in his belief that they had.