**Lawrence DIXON, Petitioner,**

v.

**Thomas J. MILLER, Acting Superintendent of Eastern Correctional Facility, Respondent.**

**No. 97 CV 0532(NG).**

United States District Court, E.D. New York.

July 14, 1999.

Georgia J. Hinde, New York City, for petitioner.

Howard A. Getzler, District Attorney's Office, Kings County, Brooklyn, NY, for respondent.

## MEMORANDUM AND ORDER

GERSHON, District Judge.

Petitioner Lawrence Dixon seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dixon was convicted in 1982 after a jury trial in absentia in New York State Supreme Court, Kings County, of Criminal Possession of a Controlled Substance in the First Degree (N.Y. Penal Law § 220.21[1]) and Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02[4]). He was sentenced to concurrent sentences of fifteen years to life and one to three years, and was released on parole in July 1998 after having served the minimum fifteen year portion of his sentence.

The petition for habeas corpus relief was filed pro se on January 30, 1997. This court appointed counsel and, following denial of respondent's motion to dismiss the petition as untimely, petitioner now asserts three claims: (1) the evidence against him was legally insufficient to support a conviction; (2) petitioner's trial counsel failed to renew a suppression motion on the basis of a new controlling decision of the State's highest court regarding evidence seized from a closed container without a warrant, and petitioner was consequently denied a favorable suppression ruling on the most serious charge against him; and (3) it was unconstitutional for the state court to try petitioner in absentia where no controlling public interest demanded it and the case already had been pending approximately five years.

## Background

In November 1977, Lawrence Dixon was a 35 year-old owner of a small grocery store and "barbecue pit" a few blocks away from a social club on Reid Avenue in Brooklyn. Beginning on November 14, 1977, the police repeatedly targeted the Reid Avenue social club as part of a heroin "buy operation." On November 30, 1977, petitioner allegedly sold four glassine envelopes of heroin to an individual who then sold the heroin to an undercover officer. Although the police recorded the transaction via a surveillance audio tape, they did not arrest petitioner immediately at the social club in order to protect the identity of a confidential informant.

The police subsequently arrested petitioner on December 8, 1977, when petitioner was observed driving an automobile to the vicinity of Sumner Avenue and Madison Street. There, as petitioner stepped out of the vehicle, police officers approached petitioner and arrested him for the November 30th transaction. A passenger in the vehicle, Michelle Johnson, was also arrested, after the police observed her moving away from what was discovered to be a partially covered gun on the front seat of the car. Petitioner, Ms. Johnson, and the vehicle were brought to the 79th Precinct, where the police conducted a routine inventory search of the car. An officer discovered a brown paper bag underneath the driver's seat containing thirty-seven glassine envelopes of a white powder that, upon testing, proved to

be two and five-eighths ounces of heroin. Defendant was charged with Criminal Possession of a Controlled Substance in the First Degree (more than two ounces of heroin) (N.Y. Penal Law § 220.21[1])[1] for the drugs found in the car, and Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02[4]) for the gun found in the car at the time of petitioner's arrest. Petitioner was further charged with Criminal Sale of a Controlled Substance in the Second Degree (N.Y. Penal Law § 220.41[1]), Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16[1]), Criminal Possession of a Controlled Substance in the Fifth Degree (N.Y. Penal Law § 220.09[1]), and Conspiracy in the First Degree (N.Y. Penal Law § 105.15), in connection with the November 30, 1977 transaction.

Two years later, beginning in October 1979, a pretrial suppression hearing was held to determine whether there was probable cause for petitioner's December 8, 1977 arrest, and whether the search of the car qualified as a routine inventory search. The court denied the motion to suppress on the grounds that the evidence connected with the November 30, 1977 narcotics transaction provided probable cause for the arrest, and that the paper bag containing the heroin was lawfully seized both as part of a valid inventory search of an impounded car and seized from the defendant's "grabbable area" at the time of his arrest.

In March 1982,[2] petitioner's case was transferred to a different trial judge. On March 4, 1982, after deciding pretrial motions and scheduling a trial date later that month, the court denied the prosecution's motion to remand petitioner. However, the court warned petitioner as follows:

> Well, I'll tell the defendant I'm going to keep him out, but for any reason he doesn't come back, when they find him—we'll continue the trial in your absence and when they find you, instead of giving you what you might have gotten if you stayed here, I'll think in terms of 25 to life if they ever—when they bring you in. So you have every reason to show up.
>
> Defendant Dixon: Well, I haven't yet disappeared in all the years I've been here.
>
> The Court: Then I suspect you'll come back, but you have every reason to come back because for any reason if you skip and I continue the trial without you, and when they find you and they always do, I wouldn't bat an eye of giving you 25 years to life for doing that. So you have every reason, both of you, to come here. I'm sure you will, Okay?

Tr. of Pretrial Motions at 79.

On March 17, 1982, following plea negotiations, petitioner agreed to plead guilty on March 22, 1982 to felony charges in exchange for an indeterminate sentence of imprisonment of six years to life. Petitioner did not, however, appear in court on March 22, and the case was adjourned to March 23, 1982. When petitioner failed to appear the next day as well, the prosecution moved to try defendant in absentia. The court conducted a hearing to determine whether petitioner was voluntarily absent and heard the testimony of an investigator with the district attorney's office regarding his efforts to locate petition-

1. Under the law in effect in 1977, possession of a quantity over 2 ounces qualified as criminal possession in the first degree and was subject to a 15-year minimum sentence. A statutory amendment that went into effect in 1979, and which remains in place today, changed the quantity qualifying for criminal possession in the first degree to any amount over 4 ounces.

2. Upon mutual consent, petitioner's trial had been postponed pending the outcome of an unrelated investigation of the police officers who had arrested petitioner. These police officers were found to have testified falsely in connection with a different narcotics prosecution from the same time period as the "buy operation" leading to petitioner's arrest.

er. The investigator stated that he had checked with various city agencies including the city morgues, the medical examiner's office, various hospitals throughout New York City, and the City Department of Corrections, all to no avail. The court issued a bench warrant for petitioner and granted the prosecution's motion to try petitioner in absentia.

Following a jury trial, petitioner was convicted on April 8, 1982 of Criminal Possession of a Controlled Substance in the First Degree and Criminal Possession of a Weapon in the Third Degree in connection with the December 8, 1977 events. On June 23, 1982, petitioner was sentenced, also in absentia, to concurrent terms of imprisonment of fifteen years to life for the drug possession count and three and one-half to seven years for the weapon possession count.

Petitioner was apprehended on April 5, 1983, and on July 6, 1983, entered a *Serrano* plea, *People v. Serrano*, 15 N.Y.2d 304, 258 N.Y.S.2d 386, 206 N.E.2d 330 (1965), where he pleaded guilty to certain charges without admitting to the underlying facts. According to an agreement between petitioner and the prosecution, petitioner pled guilty to one count of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16[1]) relating to the November 30, 1977 transaction, and to Bail Jumping in the First Degree (N.Y. Penal Law § 215.57). At sentencing proceedings on December 22, 1983, the court imposed the promised sentences of one to three years on the narcotics charge, one and one-half to three years on the bail jumping charge, and reduced petitioner's prior weapons possession sentence to a term of one to three years, all to run concurrently with the prior sentence of fifteen years to life for possession of drugs.

It is undisputed that petitioner has exhausted state remedies for each of the claims now raised as part of his petition for habeas corpus relief. The relevant post-conviction proceedings are summarized as follows: Petitioner challenged on direct appeal the trial judge's decision to try and sentence him in absentia. The appellate court affirmed both his conviction and sentence without discussion. *See People v. Dixon,* 130 A.D.2d 680, 516 N.Y.S.2d 16 (2d Dep't 1987). Leave to appeal was denied by the appellate court on June 24, 1987. *See People v. Dixon,* 70 N.Y.2d 645, 518 N.Y.S.2d 1037, 512 N.E.2d 563 (1987). Petitioner raised his ineffective assistance of counsel claim in a motion dated November 30, 1987. A newly assigned judge denied petitioner's motion on February 11, 1988, and leave to appeal was denied by the appellate court on July 7, 1988. Petitioner also raised his ineffective assistance of counsel claim in a coram nobis application filed on March 24, 1989, which was denied on May 19, 1989 by the Appellate Division.

Petitioner next applied for a state writ of habeas corpus on October 5, 1989, raising his ineffective assistance of counsel claim and an insufficiency of evidence claim. This application was denied on December 7, 1989. Petitioner brought a claim challenging the sufficiency of the evidence underlying his drug possession conviction in a N.Y. Criminal Procedure Law § 440.10 motion filed on March 9, 1994. The motion was denied on February 26, 1996, and leave to appeal was denied on May 15, 1996.

## Discussion

### Sufficiency of the Evidence

 A district court should grant habeas corpus relief only if it finds, upon the record evidence adduced at trial, that no rational trier of fact could have found proof beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This question must be reviewed in the light most favorable to the prosecution. *See id.* at 319, 99 S.Ct. 2781. To determine the essential elements of the crime, the habeas corpus court must look to state law, *see id.* at 324 n. 16, 99 S.Ct. 2781, and the evidence must be reviewed as a whole, *see*

*Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.1996). "Assessments of the weight of the evidence or the credibility of witnesses are for the [factfinder] and not grounds for reversal on appeal; we defer to the [factfinder's] assessments of both of these issues." *Id.* When faced with a record from which conflicting inferences may be drawn, the habeas corpus court must presume, even if the record does not show it affirmatively, that the trier of fact resolved the conflict in favor of the prosecution and must defer to that resolution. *See Wright v. West*, 505 U.S. 277, 297, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992).

Petitioner contends that, given the evidence presented at trial, the jury relied solely on the state statutory presumptions regarding knowing possession rather than actual evidence suggesting a nexus between the gun and the drugs and petitioner. Petitioner concedes that the jury was properly charged that it is permissible to presume possession of weapons and narcotics discovered in a vehicle in which the defendant was a driver or passenger and that, if accepted, the presumption may be rebutted by any other evidence. *See County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 163, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Barring reliance on these statutory devices, petitioner argues, however, there was insufficient evidence to convince a jury that he knowingly possessed the gun and the drugs, or that he knew the actual quantity of the heroin found in the car.

New York Penal Law § 265.15(3)(a) permits a presumption of possession of a weapon by all occupants of an automobile in which a weapon is found, except where "such weapon, instrument or appliance is found upon the person of one of the occupants therein." This presumption may be rebutted by evidence to the contrary and, even "if no contrary proof is offered, the presumption is not conclusive, but may be rejected by the jury." *People v. Lemmons*, 40 N.Y.2d 505, 510, 387 N.Y.S.2d 97, 354 N.E.2d 836 (1976). (This

presumption, as applied in *Lemmons*, was upheld on federal habeas corpus review in *Allen*, 442 U.S. at 165, 99 S.Ct. 2213). "[W]hether the rebuttal evidence is sufficient to overcome the presumption is a matter for the fact finder, not the court." *People v. Verez*, 83 N.Y.2d 921, 924, 615 N.Y.S.2d 306, 638 N.E.2d 951 (1994).

Petitioner contends that the evidence presented at trial created reasonable doubt about his knowing possession of the handgun. He emphasizes that the car he had been driving did not belong to him, but was registered to someone else and had been borrowed. He further suggests that the gun might have been planted by the police, as no police witnesses saw the gun from outside the car until Ms. Johnson, the passenger in the car, made a movement toward the gun on the seat next to her. Petitioner also finds important that he had already exited the car at the moment that the police discovered the gun on the front seat next to Ms. Johnson, and, thus, the factual connection between petitioner and the gun became more attenuated.

These arguments are unconvincing. Petitioner's case indeed resembles the *Lemmons* case. *See also Gray v. Babbie*, 1998 WL 178824 (E.D.N.Y.1998). In *Lemmons*, all occupants in an automobile were presumed to be in knowing possession of firearms located in a handbag on the floor in front of the passenger seat. Surely, as *Lemmons* held, the statutory presumption would not apply here if the weapon was hidden under one's shirt or secreted in one's pocket, but "[a]bsent this kind of clear indication that the weapon was actually upon the person of one occupant, the question of the presumption's applicability is properly left to the trier of fact under an appropriate charge." *Lemmons*, 40 N.Y.2d at 511, 387 N.Y.S.2d 97, 354 N.E.2d 836. The resolution of issues of credibility, which is central to the adjudication of petitioner's possession in this case, is exclusively the province of the jury, whose determination may not be overturned lightly. *See United States v.*

*Shulman,* 624 F.2d 384, 388 (2d Cir.1980). Here, also, possession was not so personalized with respect to Ms. Johnson as to preclude application of the presumption. *See Verez,* 83 N.Y.2d at 924, 615 N.Y.S.2d 306, 638 N.E.2d 951 ("where the officer does not observe the weapon in the exclusive possession of any one person immediately prior to or at the time of arrest, the exception is inapplicable."). The police witness testified that he observed Ms. Johnson moving her left hand horizontally across the front seat of the car away from her body and toward the driver's side of the car. Nonetheless, when the .22 caliber pistol was discovered, once Ms. Johnson exited the car as directed, it was found lying on the front seat of the car and visible underneath a yellow rag. Nothing in these facts points to sole possession of the gun by Ms. Johnson, and a jury could have reasonably presumed knowing possession of the gun by petitioner.

■ Similarly, the evidence was sufficient to find petitioner guilty beyond a reasonable doubt of knowing possession of the heroin found in the paper bag underneath the front car seat. New York Penal Law § 220.25 permits a presumption of possession of a controlled substance by all occupants of an automobile in which a controlled substance is found, except in certain circumstances, including "when the controlled substance is concealed upon the person of one of the occupants." New York Penal Law § 220.25(1)(c). The presumption is applicable where there is a "rational connection" between the fact that a defendant and the contraband were both present in the automobile and the presumption of the defendant's knowing possession of the contraband. *See People v. Gonzales,* 235 A.D.2d 493, 494, 653 N.Y.S.2d 929 (2d Dep't 1997).

Given the location of the drugs directly underneath the front seat, there was ample rational basis for the jury to conclude beyond a reasonable doubt that petitioner knowingly possessed the heroin. *See People v. Washington,* 233 A.D.2d 684, 650 N.Y.S.2d 334 (3d Dep't 1996) (sufficient evidence for knowing possession of cocaine where a brown paper bag containing cocaine was found, during an inventory search of an impounded vehicle after the defendant's arrest, stuffed behind the air vents in the front dashboard).

Lastly, petitioner argues that, at the time of petitioner's arrest in 1977, New York State law required proof of knowledge of the weight of a controlled substance for the crime of criminal possession of a controlled substance in the first degree and that here was insufficient evidence at trial to show that petitioner knew the weight of the heroin found underneath the car seat. In *People v. Ryan,* 82 N.Y.2d 497, 605 N.Y.S.2d 235, 626 N.E.2d 51 (1993), the Court of Appeals interpreted the language of New York Penal Law § 220.18 to establish a "mens rea element associated with the weight of the drug." *Id.* at 502, 605 N.Y.S.2d 235, 626 N.E.2d 51. The court further stated: "We discern no 'clear' legislative intent to make the weight of a drug a strict liability element, as is required before we can construe the statute in that manner. Moreover, the over-all structure of the drug possession laws supports the view that a defendant must have some knowledge of the weight." *Id.* at 503, 605 N.Y.S.2d 235, 626 N.E.2d 51. Although the Court of Appeals later stated that *Ryan* had not established "a new legal principle" because it was based on statutory interpretation, *People v. Hill,* 85 N.Y.2d 256, 262, 624 N.Y.S.2d 79, 648 N.E.2d 455 (1995), the interpretation was unanticipated by both legislators and lawyers, *see Stanley v. Kuhlman,* 10 F.Supp.2d 250, 255 (E.D.N.Y.1998). The New York State Legislature subsequently passed an amendment in 1995 that abolished the knowledge of weight requirement, but the amendment was made applicable only to offenses committed on or after the effective date of June 10, 1995. *See People v. Wilson,* 245 A.D.2d 402, 402, 667 N.Y.S.2d 377 (2d Dep't 1997). With regard to retroactive application of *Ryan*

and the knowledge of weight requirement, the New York Court of Appeals held in *Hill* that, "where the issue has been properly preserved, *Ryan* is retroactive to cases pending on direct appeal at the time of the decision on December 16, 1993." 85 N.Y.2d at 262, 624 N.Y.S.2d 79, 648 N.E.2d 455.

Here, respondent argues that petitioner's knowledge of weight claim was unpreserved for appellate review and thus petitioner's claim is now procedurally barred. Respondent also contends that the *Hill* decision makes *Ryan* inapplicable to cases in which the trial and appellate process was completed prior to 1993. Alternatively, respondent argues that there was sufficient evidence provided during the trial for a jury to conclude that petitioner had knowledge of the weight of the heroin. Petitioner concedes that, strictly speaking, *Ryan* is inapplicable to petitioner, whose direct appeals terminated well before *Ryan* was decided in 1993. However, petitioner argues he is entitled to federal habeas corpus relief to correct a fundamental miscarriage of justice created by the conviction of someone who is factually innocent; for this proposition, he cites *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) and *Triestman v. United States*, 124 F.3d 361 (2d Cir. 1997).

■ Other federal habeas courts have held that *Ryan* claims of insufficient evidence of knowledge of weight which were unpreserved are procedurally barred, *see Nkemakolam v. Senkowski*, 1998 WL 388700, at *2 (E.D.N.Y.1998), and that *Ryan* cannot be applied retroactively in cases where the direct appeals process had already been exhausted at the time *Ryan* was decided, *see Mason v. Ross*, 1996 WL 363108, at *4 (S.D.N.Y.1996). Here, petitioner promptly raised a claim

under C.P.L. § 440.10 after *Ryan* was decided. The state court determined that the issue regarding knowledge of the weight of the drugs had not been preserved with a specific enough objection,[3] and denied petitioner's motion. As such, petitioner's insufficiency of evidence claim is unpreserved and thus procedurally barred.

Even were I to consider the merits of the claim, there is sufficient evidence on the record to establish that petitioner had knowledge of the weight of the heroin. New York courts have articulated certain circumstances from which the requisite knowledge concerning weight may be inferred. The *Ryan* court stated that "negotiations concerning weight, potency or price" qualify as such evidence and that, for controlled substances measured on an aggregate weight basis, "knowledge of the weight may be inferred from defendant's handling of the material, because the weight of the entire mixture, including cutting agents is counted." *Ryan*, 82 N.Y.2d at 505, 605 N.Y.S.2d 235, 626 N.E.2d 51. In *People v. Sanchez*, the Court of Appeals further clarified those instances where knowledge of weight may be inferred; interpreting the "handling" of drugs described in *Ryan*, the *Sanchez* court stated that this was .

> not limited to instances where the defendant manipulates the substance in the process of manufacture and packaging of drugs. It merely connotes sufficient contact with the substance to experience its weight—to give rise to a probability defendant became aware of the weight of the drugs in his possession. Such contact need not lead to precise knowledge of weight in ounces or grams.... When drugs are packaged in vials, with roughly the same quantity in each vial throughout the drug-dealing industry, possession of a specific number of vials of cocaine would generally give rise to

---

3. Petitioner's defense counsel had challenged the sufficiency of the prosecution's evidence and the application of the statutory presump- tion regarding possession, but never referred specifically to the evidence regarding knowledge of the weight of the drugs.

an inference defendant knew he possessed that particular quantity of drugs.... Where there is evidence of the price paid for a quantity of drugs, then there is evidence defendant knew its weight, since value is based on weight.

*People v. Sanchez*, 86 N.Y.2d 27, 33–34, 629 N.Y.S.2d 179, 652 N.E.2d 925 (1995). Other circumstances suggesting knowledge of weight include known occasions where the defendant measured out an amount of cocaine requested by a confidential informant onto a scale, *see People v. Warren*, 232 A.D.2d 589, 590, 648 N.Y.S.2d 670 (2d Dep't 1996), the discovery of drugs packaged into numerous small bags of saleable units, *see People v. Hardy*, 226 A.D.2d 652, 653, 641 N.Y.S.2d 366 (2d Dep't 1996); *People v. Wright*, 214 A.D.2d 989, 990, 626 N.Y.S.2d 340 (4th Dep't 1995), the close proximity of drug paraphernalia, *see People v. Love*, 204 A.D.2d 97, 98, 610 N.Y.S.2d 958 (1st Dep't 1994), or evidence of the defendant's prior experience as a drug dealer, *see People v. Juwara*, 163 Misc.2d 311, 315, 620 N.Y.S.2d 909 (N.Y.Sup.Ct.1994); *People v. Sanchez*, 205 A.D.2d 472, 613 N.Y.S.2d 912 (1st Dep't 1994).

■ Viewed in the light most favorable to the prosecution, as required, the evidence is sufficient to show that petitioner knew the weight of the drugs. The evidence before the jury included the division of the heroin into thirty-seven glassine envelopes and petitioner's involvement in the November 30, 1977 sale at the nightclub. Therefore, petitioner's claim of insufficiency of evidence of his knowledge of weight must fail.

## Ineffective Assistance of Counsel

Petitioner argues that his otherwise admittedly highly competent trial counsel, Myron Beldock, Esq., failed to renew a suppression motion based upon a favorable decision by the New York Court of Appeals that, he believes, could have resulted in the suppression of the heroin contained in the paper bag found underneath the car seat and, thus, the dismissal of the most serious charge against him. In October 1979, petitioner's trial counsel had moved to suppress the heroin specifically on the ground that it was illegal for the police to open the paper bag, arguably a closed container, without a warrant and even as part of a valid inventory search of an impounded vehicle. The judge denied the motion, finding the search of the paper bag to be legal. Thereafter in *People v. Roman*, 53 N.Y.2d 39, 439 N.Y.S.2d 894, 422 N.E.2d 554 (1981), the New York Court of Appeals expressly held that the warrantless search of closed containers found as part of a valid inventory search of an impounded automobile was unlawful absent exigent circumstances. The court explained that the Fourth Amendment did not protect certain closed containers, such as those where the "contraband nature of the contents 'can be inferred from their outward appearance,'" or where the "contents are exposed to 'plain view.'" *Roman*, 53 N.Y.2d at 39, 439 N.Y.S.2d 894, 422 N.E.2d 554 (quoting *Arkansas v. Sanders*, 442 U.S. 753, 764 n. 13, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979)). However, the court held that a cigarette case which was at least partially opaque qualified as a protected container and could not be searched without a warrant. The *Roman* decision is dated May 14, 1981, after petitioner's suppression hearing and the court's subsequent decision on January 18, 1980, but before the start of trial on March 24, 1982. Following further clarification by the United States Supreme Court in subsequent decisions, the New York Court of Appeals revisited *Roman* in *People v. Gonzalez*, 62 N.Y.2d 386, 477 N.Y.S.2d 103, 465 N.E.2d 823 (1984) and, desirous of keeping New York law consistent with federal law, held instead that inventory searches of closed containers were lawful. Notwithstanding this change in the law, petitioner contends that trial counsel's failure to renew the motion to suppress on the basis of the *Roman* decision constituted ineffective assistance of counsel.

To succeed on a claim of ineffective assistance of counsel, the conduct of trial counsel must have so undermined the functioning of the adversarial process that the trial outcome is unreliable. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must show that counsel's performance was deficient and that this deficient performance prejudiced the defense to the extent that the petitioner failed to receive a fair trial. *See id.* Failure to make the required showing of either deficient performance or prejudice defeats an ineffectiveness claim. *See id.* at 700, 104 S.Ct. 2052. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See id.* at 689, 104 S.Ct. 2052. Moreover, an attorney's performance must be evaluated in light of the prevailing legal practice at the time, without the benefit of hindsight. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994); *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

With regard to the determination of prejudice, the court must consider all the evidence and find with a reasonable probability that, absent counsel's deficient performance, the outcome would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."*Strickland,* 466 U.S. at 695, 104 S.Ct. 2052. Unlike the performance prong, the prejudice determination may be evaluated with the benefit of hindsight. *See McKee v. United States,* 167 F.3d 103, 106–07 (2d Cir.1999). The outcome determination test articulated by *Strickland* applies in most ineffectiveness of counsel claims. However, in *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Supreme Court clarified that, under certain circumstances, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." The Court explained that "[u]nreliability or unfairness does not

result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372, 113 S.Ct. 838. In *Fretwell,* trial counsel at the capital stage of petitioner's bifurcated Arkansas state trial failed to raise an objection based upon then sound Eighth Circuit law. Had such an objection been made and upheld, petitioner would not have been sentenced to death. By the time the petitioner's application for habeas corpus relief reached the Court of Appeals for the Eighth Circuit, the Circuit had overruled the case upon which the omitted objection would have been based, but held that petitioner was nevertheless prejudiced by counsel's omission. The Supreme Court reversed, holding that a determination of prejudice in these circumstances would grant the petitioner a "windfall to which the law does not entitle him." *Id.* at 370, 113 S.Ct. 838.

Post–*Fretwell,* courts have applied the more stringent *Fretwell* analysis quite narrowly, often finding the traditional outcome determination test sufficient and declining to inquire additionally into the reliability and fairness of a proceeding. Indeed, in her concurring opinion in *Fretwell,* Justice O'Connor noted that the *Strickland* prejudice inquiry remained appropriate for the "vast majority of cases." She explained that *Fretwell* specifically held that "the court making the prejudice determination may not consider the effect of an objection it knows to be wholly meritless under current governing law, even if the objection might have been considered meritorious at the time of its omission." *Fretwell,* 506 U.S. at 374, 113 S.Ct. 838. Thus, courts have deemed the *Fretwell* analysis applicable only in the limited circumstances where a counsel's omitted argument was based on law subsequently overturned, as in *Fretwell,* or where a state court applied federal law erroneously, *see Bunkley v. Meachum,* 68 F.3d 1518, 1523 (2d Cir.1995) (finding no prejudice resulting from counsel's failure to argue a state court's erroneous inter-

pretation of federal law when outcome of proceeding was not unfair or unreliable under proper application of federal law). *See also Flores v. Demskie,* 11 F.Supp.2d 299, 306 (S.D.N.Y.1998) (*"Fretwell* does not dictate that a Court always inquire into the reliability and fairness of the proceeding in addition to whether the outcome would have been different; rather, its fairness and reliability inquiry applies only in limited circumstances—i.e., when the state or lower court creates a rule favorable to the defendant based on an erroneous interpretation of federal law."). In other situations, courts have expressly declined to apply the *Fretwell* analysis and relied solely on the outcome determination standard. *See Bunkley,* 68 F.3d at 1522–23 (finding outcome determination test sufficient where "there is no reason to believe that the state appellate court's interpretation of federal law would be incorrect," or where the underlying claim involves "only state law"); *Mayo,* 13 F.3d at 530–31 (ruling, post-*Fretwell,* that omitted claim based on New York's *Rosario* rule was subject only to *Strickland* test for prejudice); *Flores,* 11 F.Supp.2d at 306; *Grady v. Artuz,* 931 F.Supp. 1048, 1062 (S.D.N.Y.1996) ("the validity of the foregone argument has actually been confirmed rather than undermined or overturned by subsequent decisions from the New York state courts. Thus, this petitioner fits within that class of cases where the traditional *Strickland* analysis plainly applies").

■■■ Here, the *Fretwell* analysis clearly applies. Under these facts, quite similar to those of *Fretwell,* the case upon which the omitted objection would have been based has been overruled, and thus a finding of prejudice based solely on the possibility of a different outcome would bestow upon petitioner a windfall to which he is not entitled under current law. After the New York Court of Appeals overruled *Roman* in *Gonzalez,* New York courts have consistently held that closed containers discovered during inventory searches may

be lawfully searched. *See, e.g., People v. Cooper,* 241 A.D.2d 553, 554, 661 N.Y.S.2d 243 (2d Dep't.1997). Under current federal law, searches of closed containers found in vehicles are legal provided that there is a routine, standardized police procedure for inventory searches, and the search is not conducted with an investigatory intent. *See Colorado v. Bertine,* 479 U.S. 367, 374, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *United States v. Thompson,* 29 F.3d 62, 65–66 (2d Cir.1994). Thus, pursuant to current state and federal law, the omission by petitioner's counsel to argue the *Roman* decision did not render his trial fundamentally unreliable or unfair under the *Fretwell* analysis. Petitioner's ineffectiveness of counsel claim fails to establish prejudice and thus is without merit.

### Trial and Sentence In Absentia

■■■ Although a defendant is guaranteed under the Sixth Amendment the right to be present at his own trial, trials in absentia are constitutional if a defendant knowingly and voluntarily waives his right to be present. *See United States v. Nichols,* 56 F.3d 403, 416–17 (2d Cir.1995); *United States v. Fontanez,* 878 F.2d 33, 36 (2d Cir.1989); *United States v. Tortora,* 464 F.2d 1202, 1209–10 (2d Cir.1972). Federal law requires district courts to balance the interests weighing in favor of proceeding with trial against a defendant's Sixth Amendment rights. *See Tortora,* 464 F.2d at 1209–10. However, the Court of Appeals for the Second Circuit recently stated that:

only the first element—a knowing and voluntary waiver—is required by the Constitution; the second element—a balance of interest weighing in favor of trial—simply governs the trial court's exercise of its discretion to proceed with a trial in absentia that is constitutionally permissible.... We therefore conclude that while prudential concerns animate the need for a balancing of interests before a district court exercises its discretion to conduct a trial in absentia, all

that the Constitution requires is a knowing and voluntary waiver of the right to be present at trial. It is only the constitutional question that is before us in this habeas corpus proceeding.

*Smith v. Mann,* 173 F.3d 73, 76 (2d Cir. 1999). To find that a defendant has waived his right to be present at trial, a court must find that the record clearly shows that "the defendant was advised when proceedings were to commence and that he voluntarily, knowingly, and without justification failed to be present at the designated time and place." *United States v. Sanchez,* 790 F.2d 245, 249 (2d Cir.1986) (citing *Tortora,* 464 F.2d at 1209). Where a defendant deliberately fails to appear in court on a predetermined date of trial, the defendant is held to have knowingly and voluntarily waived the right to be present at trial. *See Taylor v. United States,* 414 U.S. 17, 20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973). A defendant need not be directly informed by the court of all pertinent trial dates; "[i]t may be inferred that a defendant was advised of a trial date once it is communicated by the judge to the lawyer." *Ortiz v. Keohane,* 1995 WL 669904, at *4 (E.D.N.Y.1995) (citing *Sanchez,* 790 F.2d at 249). If a defendant refuses to appear and the court is unable to locate him, a trial judge may determine that defendant has waived his right to be present and proceed in his absence. *See McGann v. Kelly,* 891 F.Supp. 128, 134 (S.D.N.Y. 1995); *Smith v. Kelly,* 664 F.Supp. 131, 135 (S.D.N.Y.1987). A defendant may also be sentenced in absentia, whether or not the court has specifically advised him of his right to be present at sentencing. *See United States ex rel Rosemond v. Smith,* 1994 WL 119108, at *2 (S.D.N.Y.1994); *Wingate v. Scully,* 764 F.Supp. 319, 320 (S.D.N.Y.1991).

██ Here, the record is clear that petitioner's trial and sentencing in absentia did not violate his constitutional rights.

Petitioner calls attention to the fact that the court appearance for which he failed to appear was scheduled for an anticipated plea rather than the commencement of trial. The distinction is immaterial given that the trial judge clearly had warned petitioner at his prior court appearance that, should he not appear when "you're supposed to show up," the "trial will continue in your absence." When petitioner failed to appear at his next court appearance, the trial court made reasonable efforts to locate petitioner, ordering a one day continuance of trial, issuing a bench warrant, and hearing testimony from an investigator detailing his canvassing of local hospitals, the city morgues, the Department of Corrections, the Medical Examiner's Office, and other city agencies in efforts to determine petitioner's whereabouts. *See Sanchez,* 790 F.2d at 248; *Smith,* 664 F.Supp. at 135. Indeed, it is undisputed that petitioner stated later on the record that his absence from the trial was voluntary (albeit based allegedly on his fear of an unduly harsh outcome). *See* Petitioner's Mem. of Law at 21 n. 28.[4] In short, it was proper for the trial court to find a knowing and intentional waiver by petitioner of his right to appear and, thus, the trial and sentencing in absentia was not a violation of petitioner's constitutional rights.

### Conclusion

The petition for a writ of habeas corpus is denied.

**SO ORDERED.**

---

4. At his appearance on July 6, 1983 to enter his *Serrano* pleas, petitioner admitted that his absence from trial was voluntary.